# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAYMOND GARCIA, )<br>)<br>Defendant. )<br>_____ ) | 2:03-cr-0467-BES-LRL<br>Motion to Suppress (#102) |

## REPORT & RECOMMENDATION

The defendant, Raymond Garcia, is awaiting trial on a two-count superseding indictment charging him with Conspiracy to Distribute a Controlled Substance (21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii)) and Possession of a Controlled Substance with Intent to Distribute (21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)). Garcia has filed a Motion to Suppress (#102), in which he contends that as he was being transported to court on October 10, 2003 -- the day after he was arrested -- he was interrogated by the transporting officer, Scott Thomas, who extracted incriminating statements from him without having advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). An evidentiary hearing was held on March 30 and April 18, 2006. Having considered Garcia's motion, the government's Opposition (#103), Garcia's Reply (#107), the testimony of DEA Task Force Detective Christopher Bunn and Officer Scott Thomas, and the oral arguments of counsel, the undersigned U.S. Magistrate Judge submits this Report & Recommendation.

## THE ISSUE

In his Motion to Suppress (#102), Garcia alleges that on October 10, 2003 he and

1  Officer Thomas, who drove Garcia to the federal courthouse that day and who did not advise
2  Garcia of his *Miranda* rights, "engaged in conversation regarding Mr. Garcia's charges and
3  other legal issues ...." Motion (#102) at 4.  During the conversation, Garcia "allegedly made
4  incriminating statements.  After making such statements, Officer Thomas, knowing that he was
5  eliciting incriminating statements, asked Mr. Garcia to repeat what he had just stated and then
6  asked questions regarding the same." *Id.*  Garcia contends that Officer Thomas's failure to give
7  him his *Miranda* warnings requires suppression of the statements he made to Thomas.  Garcia's
8  motion is silent with regard to whether on the day of his arrest -- October 9, 2003 -- Det. Bunn
9  advised him of his rights under *Miranda*, and whether Garcia invoked any of those rights.

10  In its Opposition (#103), the government alleges that immediately following Garcia's
11  arrest on October 9, 2003, Det. Bunn advised Garcia of his *Miranda* rights and warnings in
12  Spanish, and that Garcia "invoked his right to counsel." Opposition (#103) at 3.  The
13  government further alleges that when Garcia asked for an attorney, he was not questioned. *Id.*

14  In his Reply (#107), Garcia notes that "[t]he Government admits that on October 10,
15  2003, Mr. Garcia was in the custody of U.S. Marshall's (sic) and had invoked his right to an
16  attorney.  The Government also acknowledges that while Mr. Garcia was in custody and after
17  he had requested an attorney, a U.S. Marshall (sic) engaged in a conversation with Mr. Garcia."
18  Reply (#107) at 2.

19  Garcia's Motion keyed on Officer Thomas's failure to advise Garcia of his *Miranda*
20  rights on October 10, 2003.  When the government represented in its Opposition that Garcia had
21  been advised of and had asserted his right to counsel following his arrest on October 9, 2003,
22  Garcia in his Reply (#107) redefined the core suppression issue in terms of *Edwards v. Arizona*,
23  451 U.S. 477 (1981).  Hence, the key factual issue for the evidentiary hearing was whether
24  Officer Thomas in fact initiated an interrogation of Garcia while he transported him to the
25  courthouse on October 10, 2003.

26  . . .

2

# THE EVIDENCE

At the evidentiary hearing the uncontradicted testimony of Det. Bunn was that immediately following the arrest of Garcia and four other Hispanic men on October 9, 2003, Det. Bunn, who is fairly conversant in Spanish, advised Garcia and the others collectively of their *Miranda* rights in both English and Spanish. He then asked each arrestee individually whether he understood his rights. Each indicated that he did. One of the five men, Beltran, asked for a lawyer; and a second man, Quintero, asserted his right to silence. Therefore neither man was questioned. The other three men, Lara, Ortega and Garcia, spoke to Det. Bunn, and answered his questions. Det. Bunn testified that Garcia answered all his questions, and at no time asked for a lawyer or indicated that he didn't want to answer Det. Bunn's questions.

Officer Thomas also testified at the evidentiary hearing. According to his uncontradicted testimony, during the drive from the city jail to the federal courthouse on the morning after the arrest, Garcia initiated a conversation with Thomas by asking what he was charged with. Thomas told him he was charged with possession with the intent to distribute methamphetamine. Garcia asked, "What's methamphetamine?" Thomas responded, "Vidrio," "velocidad," which are Spanish slang terms for methamphetamine, meaning "glass" and "speed," respectively. Thomas testified that Garcia immediately responded, "No, no, no! I had mota." "Mota" is a Spanish term for marijuana. Thomas responded, "You were arrested for possessing more than 31 pounds of meth." Garcia said, "I thought I was transporting mota to Las Vegas." Garcia then asked what his sentence could be if he were convicted. Thomas replied, "Depends on the judge, 20 to life." Garcia said it wasn't worth $600. Thomas wasn't sure he heard Garcia correctly. He said, "I'm sorry, what did you say?" Garcia replied, "It wasn't worth $600. That's what I was paid." Garcia then asked what he could do to help himself. Thomas said he can tell the case agent that Garcia wants to help. Garcia asked what he would have to do. Thomas said he'd have to tell them where he got the drugs, who all is involved, how the drugs were transported, and how much money was involved. Garcia then

said, "It wasn't my stuff. Quintera paid me to transport the stuff." When Thomas dropped Garcia off at the U.S. Marshal Service office, Garcia reminded Thomas to "be sure to tell the case agents I want to speak with them."

Officer Thomas testified that he didn't advise Garcia of his *Miranda* rights because he wasn't planning to interrogate him. This was not a case to which Thomas was assigned as an investigator, nor did Thomas have much information about the case. His sole assignment was simply to transport Garcia from the city jail to the U.S. Marshals Service lock-up in the federal courthouse. He testified that the entire trip took no more than ten minutes, and that each time he answered one of Garcia's questions, he thought the conversation would end. But Garcia would ask yet another question.

## DISCUSSION

The evidentiary hearing was predicated upon a false premise, *viz.*, that when he was arrested Garcia immediately invoked his right to counsel. On the contrary, the testimony of Det. Bunn amply demonstrates that at no time following his arrest on October 9, 2003 did Garcia invoke his right either to counsel or to remain silent. Indeed, the evidence is clear that Garcia waived his *Miranda* rights and agreed to talk to Det. Bunn. Accordingly, *Edwards v. Arizona*, 451 U.S. 477 (1981) is inapposite.

A waiver of *Miranda* rights must be shown by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157 (1986). To prove such a waiver, the government must show that (1) the relinquishment of the right was voluntary, not the result of intimidation, coercion or deception, and (2) the defendant understood the rights he was waiving. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In assessing the validity of a waiver, courts look to the totality of the circumstances surrounding the interrogation. *Id*. "[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 375-76 (1979).

The court finds that Garcia's waiver of his *Miranda* rights on October 9, 2003 was the product of uncoerced choice. Det. Bunn testified that Garcia appeared to understand his rights, and responded "appropriately" and coherently to Bunn's questions. Det. Bunn did not use or threaten the use of force against Garcia to induce him to waive his rights. Garcia understood his rights and waived them when, without coercion or force, he elected to answer Bunn's questions.

As for the statements that Garcia made to Officer Thomas the next day while being transported to the federal courthouse, the record is clear that the conversation itself was initiated by Garcia, and that during the course of the conversation Thomas did not interrogate Garcia. Interrogation is "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The functional equivalent of interrogation consists of "words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. The only question that Thomas asked Garcia during the entire ten-minute ride to the courthouse was "I'm sorry, what did you say?" The question hardly amounts to interrogation. Every other statement Thomas made was in response to Garcia's questions. The court therefore concludes that the incriminating statements Garcia made to Officer Thomas on October 10, 2003 were unsolicited and volunteered, not the product of interrogation. Therefore, the *Miranda* warnings were not required.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned U.S. Magistrate Judge that Garcia's Motion to Suppress (#102) should be denied.

DATED this 9th day of May, 2006.

*/s/ Leavitt*

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**

5